UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | | |
|---|---|---|---|
| ANTHONY P. MCGHEE, *Pro Se*, | ) | Case Nos.: | 1:08 CV 2193 |
| | ) | | 1:07 CR 177 |
| Petitioner | ) | | |
| | ) | | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent | ) | | |
| | ) | ORDER | |

Now pending before the court are the following Motions filed by *Pro Se* Petitioner Anthony P. McGhee ("Petitioner" or "McGhee"): (1) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Section 2255 Mot.," 1:08 CV 2193, ECF No. 1); (2) Motion to Quash the Judgment for Defective Indictment/Information and Lack of Criminal Jurisdiction ("Mot. to Quash," 1:07 CR 177, ECF No. 19); and (3) Motion to Correct Clerical Mistake (1:08 CR 177, ECF No. 21). For the reasons set forth below, the court denies Petitioner's § 2255 Motion, denies Petitioner's Motion to Quash, and grants Petitioner's Motion to Correct Clerical Mistake.

## I. FACTUAL BACKGROUND

### A. Information

The government filed a one-count Information against Petitioner on March 19, 2007, which charged him with conspiracy, in violation of 18 U.S.C. § 371, to commit the following offenses: (1)

mail theft, in violation of 18 U.S.C. § 1708; (2) bank fraud, in violation of 18 U.S.C. § 1344; and (3) money laundering, in violation of 18 U.S.C. §§ 1956 and 1957. (1:07 CR 177, Information at 1-2, ECF No. 1.) Specifically, the Information alleged that McGhee was a significant participant in a conspiracy to:

> (1) [S]teal incoming and outgoing checks from the mailroom at the Eaton Center in downtown Cleveland, Ohio;
>
> (2) [E]ngage in fraudulent banking transactions by depositing the stolen checks into accounts maintained at federally-insured financial institutions in the Cleveland area; and
>
> (3) [L]aunder the funds generated from the stolen checks and fraudulent banking transactions.

(*Id.* at 2.)

### B. Plea Agreement

On April 16, 2006, McGhee pled guilty to Count One of the Information. (1:07 CR 177, Change of Plea Hr'g Tr., ECF No. 29.) The Plea Agreement set forth a maximum sentence of five years, a $250,000 fine, full restitution, and three years of supervised release. (1:07 CR 177, Plea Agreement at 1, 3, ECF No. 9.) The government also agreed it would not "bring any other charges against [McGhee] with respect to conduct charged in the Information or based on facts currently within the knowledge of the [government]." (*Id.* at 3.) Additionally, the government agreed it would "not oppose [McGhee's] request that the sentences in Case Nos. 1:06CR401 [a related case before Judge Wells] and 1:07CR177 be served concurrently." (*Id.* at 8.)

Significantly, McGhee agreed in the Plea Agreement that he was satisfied with the assistance of his counsel, Russell Tye ("Tye"):

> Defendant makes the following statements:  I acknowledge receiving the assistance

-2-

> of counsel from attorney Russell W. Tye concerning this plea agreement. I have fully discussed with my attorney all of my Constitutional trial and appeal rights, the nature of the charges, the elements of the offenses the United States would have to prove at trial, the evidence the United States would present at trial, the Sentencing Guidelines, and the potential consequences of pleading guilty in this case. I have had sufficient time and opportunity to discuss all aspects of the case in detail with my attorney and have told my attorney everything I know about the charges, any defense that I may have to those charges, and all personal and financial circumstances in possible mitigation of sentence. I am satisfied with the legal services and advice provided to me by my attorney and believe that my attorney has given me competent and effective representation.

(*Id.* at 11.)

McGhee also agreed that the Plea Agreement was voluntarily entered, and that "no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty. (*Id.* at 11-12.) Moreover, McGhee indicated again on the signature page of his Plea Agreement that his plea was voluntary:

> I have initialed each page of the agreement to signify that I have read, understood, and approved the provisions on that page. I am entering this agreement voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this agreement.

(*Id.* at 13.)

Additionally, the Plea Agreement stated that Petitioner agreed to waive most of his rights to appeal and post-conviction attack:

> Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding including a proceeding under 28 U.S.C. § 2255. <u>The Defendant expressly waives those rights, except as reserved below</u>. Defendants reserves the right to appeal: (1) any punishment in excess of the statutory minimum; (b) any sentence to the extent it exceeds the guideline computation agreed to by the parties herein; and (c) any alleged error or miscalculation of the Defendant's criminal history. Nothing in this paragraph shall act as a bar to the Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of

-3-

      counsel or prosecutorial misconduct.

(*Id.* at 6) (emphasis added.)

Finally, the Plea Agreement stated that Petitioner agreed to fully cooperate with the government, and a failure to cooperate would result in a breach of the Plea Agreement:

> Defendant agrees to fully cooperate with the United States of America ..., as and when requested by the [United States Attorney's Office], including, but not limited to, investigations and prosecutions related to this case. Such cooperation shall include providing all information, attending all interviews, testifying before all tribunals, providing all documents and records and providing all other forms of cooperation requested by government agents and prosecutors. Such cooperation also includes the obligation to provide truthful and complete information and the obligation not to commit any crimes. Defendant understands that if Defendant provides any false or misleading information, documents, or testimony, refuses to testify or otherwise fails to cooperate, or commits any additional crimes, such conduct will constitute a breach of this agreement.

(*Id.* at 9.)

### C. Change of Plea Hearing

At the change of plea hearing on April 16, 2007, the court indicated that Petitioner "not only agreed to the charges which [the government] [was] going to bring, but you also agreed to a plea relative to those charges." (Change of Plea Hr'g, Tr. at 4.) McGhee acknowledged that he received a copy of the Information, his lawyer reviewed it with him, and he had the opportunity to ask his lawyer questions and had done so. (*Id.* at 7-9.) Petitioner also answered that he was fully satisfied with the counsel, representation, and advice that his lawyer had given him. (*Id.* at 9.) Moreover, McGhee agreed that no one had attempted in any way to force him to plead guilty. (*Id.*)

The court then asked the government to set out the basic terms of the Plea Agreement. (*Id.* at 11.) The government did so, and McGhee agreed these were the basic terms in the Plea Agreement. (*Id.* at 11-16.) The court subsequently asked McGhee if he understood that "you have a right to plead not guilty, to stick with the not guilty plea, and go to trial if that's what you wanted

to do?" (*Id.* at 18.) Defendant answered that he understood this to be the case. (*Id.*) Finally, in response to the questioning by the court, Petitioner agreed that he was pleading guilty to conspiracy related to "combining and conspiring with others to commit certain thefts of mail, money laundering, money laundering offenses, and bank fraud," as set forth in the Information. (*Id.* at 19.)

Based on the foregoing, the court found that McGhee was "fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea, and that his plea of guilty is a knowing and voluntary plea, supported by an independent basis in fact containing each of the elements of the offense." (*Id.* at 22-23.) Accordingly, the court accepted McGhee's plea and found him guilty of the conspiracy offense charged in the Information. (*Id.* at 23.)

### D. Sentencing Hearing

During the sentencing hearing before the court on September 18, 2007, the government indicated that McGhee had recently accused the government of wrongdoing in a two-hour sentencing hearing before Judge Wells in a related case, Case No. 1:06 CR 401. (Sentencing Hr'g Tr. at 16.) The government stated that: "Mr. McGhee has indicated he wants to appeal the sentence in Judge Wells's case, even though there's a comprehensive waiver of appellate rights in that case, and Judge Wells did not go outside the contemplated Sentencing Guideline range." (*Id.* at 17.) Thus, the government concluded that McGhee "doesn't feel obligated to live up to his end of the bargain and I think he has materially breached his obligations under the Plea Agreement." (*Id.*) As a result, the government argued it was no longer bound by the Plea Agreement and sought a higher sentence:

> [The government is] no longer bound to state it will not oppose the sentence in this case to be run concurrently with Judge Wells's sentence as indicated in Paragraph

> 18 of the Plea Agreement, so I would ask the Court to consider either a consecutive sentence or probably, to be fair, as I think the Court indicated at the very outset, if these two cases were combined, if Judge Wells had not recused herself, it would have been sentenced as one case and it would have been a level 24, criminal history category four for a range of 77 to 96 months.  So I would ask the Court to consider a sentence at the high end of that range, of 96 months, essentially giving credit for the 78 months that Judge Wells has already sentenced Mr. McGhee to, and you can run the rest of it concurrently.
>
> But I would ask the court to consider a consecutive sentence to the extent of 18 months; 78 months, he already has received, plus 18 months, to arrive at the 96 figure because that's what I believe would have happened had this case been consolidated with Judge Wells.

(*Id.*)

The court subsequently sentenced McGhee to a term of 50 months incarceration. (*Id.* at 26; Judgment at 2, ECF No. 10.)  The court indicated that seven months of the term was to be served consecutively to the sentence in Case No. 1:06 CR 401, with the remaining 43 months to run concurrently with the sentence imposed by Judge Wells in that case.  (Sentencing Hr'g Tr. at 26-27; Judgment at 2, ECF No. 10.) Thus, the court explained to McGhee that this sentence, along with Judge Wells's sentence in the related case, "effectively gives you 85 months, which ... would have been in the middle of the Guideline Range if both of these cases were before Judge Wells." (Sentencing Hr'g Tr. at 23.) The court based its sentencing determination on McGhee's previous criminal history, especially those prior crimes involving fraud and misrepresentation.[1] The court emphasized that the sentencing decision was not "affected or influenced by [the government's] argument that it didn't have to abide by [the Plea Agreement]," but rather was "my independent

---

[1] McGhee's criminal history includes the following: vandalism; petty theft; fraud with an access device; possession with intent to distribute cocaine; domestic violence; identify theft; tampering with records; aggravated theft using fraudulent identification; and forgery. (Sentencing Tr. at 24-25.)

-6-

decision based on all of the information in front of me." (*Id.* at 26.) The court also ordered McGhee to make restitution in the amount of $258,625.40. (Judgment at 5.)

### E. McGhee's § 2255 Motion

McGhee argues in his § 2255 Motion that his sentence should be vacated on four grounds: (1) ineffective assistance of counsel (Ground One); prosecutorial misconduct (Ground Two); (3) "the Indictment/Information was fatally defective"; and (4) McGhee "wasn't prosecuted in the proper court with legal jurisdiction as Congress intended." (Section 2255 Mot. at 5-12.) The specific facts underlying each ground are fully set forth below in Section III.

## II. STANDARD OF LAW

Title 28 U.S.C. § 2255 sets forth four grounds upon which a federal prisoner may base a claim for relief: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Generally, to prevail on a § 2255 motion alleging a constitutional error, the petitioner must show an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). To prevail on a non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice', or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). Moreover, in order to obtain this form of collateral relief, "a prisoner must clear a significantly higher hurdle than would exist on

direct appeal," *United States v. Frady*, 456 U.S. 152, 166 (1982), because "[o]nce the defendant's chance to appeal has been waived or exhausted . . . we are entitled to presume he stands fairly and finally convicted." *Id.* at 164.

### III. LAW AND ANALYSIS

#### A. Count One: Ineffective Assistance of Counsel

<u>1. Standard</u>

The Sixth Amendment guarantees all defendants the right to constitutionally effective assistance of counsel. Counsel is presumed effective; thus, a petitioner has a significant hurdle in establishing ineffective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668, 686 (1984), the Supreme Court held:

> The benchmark for judging any claim for ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result.

To establish that counsel was ineffective, a defendant must prove: (1) that the counsel's performance was deficient; and (2) that the deficient performance prejudiced the defendant. A counsel's performance is deficient when that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id*. at 687. In determining whether counsel's performance prejudiced the defendant, the defendant must show that the counsel's error "was so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In this regard, the Sixth Circuit has explained:

> The Constitution . . . does not guarantee . . . an excellent lawyer. It does not even guarantee . . . a good lawyer. Instead, the Sixth Amendment right to the effective assistance of counsel entitles [a defendant] to nothing more than a "reasonably competent attorney" whose performance falls "within the range of competence demanded of attorneys in criminal cases."

*Moran v. Trippett*, No. 96-2174, 1998 U.S. App. LEXIS 12566, *14-*15 (6th Cir. June 8, 1998) (citing *Strickland*, 466 U.S. at 687).

### 2. Application

McGhee asserts the following factual items to support Count One, i.e., that Tye was constitutionally ineffective because he allegedly:

(1) Misrepresent[ed] the material facts surrounding the case.

(2) [Didn't] file any motions to the court challenging jurisdiction of the court to hear the case.

(3) [N]ever filed any motions on McGhee's [behalf];

(4) [Made] promises about this case that he couldn't keep and told [McGhee] to go along with what's being said in the court house.

(5) Counsel [was biased] [against McGhee] when [McGhee] wouldn't agree to talk to the U.S. Attorney and the agents. Attorney Russell W. Tye coerced the movant to plea (sic) guilty while he was under duress.

(Section 2255 Mot at 5.)

*a. Items One, Three, and Four*

The broad allegations contained in items one, three, and four, as stated above, set forth no specific factual basis for this court to evaluate the merits of McGhee's claim that Tye was constitutionally ineffective. For example, McGhee fails to identify: any material facts his counsel allegedly misrepresented; what motions McGhee wished his counsel would have but did not file; or, what promises his counsel made that he did not keep. Moreover, a review of the docket shows that McGhee's claim that Tye failed to file any motions on McGhee's behalf is incorrect because Tye filed Objections to McGhee's Pre-Sentence Report. (ECF No. 5.) Thus, McGhee fails to allege facts in items one, three, and four that demonstrate Tye's representation was constitutionally

deficient.

Additionally, even if McGhee had shown that Tye's performance was deficient, McGhee fails to demonstrate how he was prejudiced as a result in the face of the following argument by the United States:

> Russell Tye did an exceptionally effective job in representing McGhee. Tye negotiated very favorable plea agreements in both cases. In Judge Wells' case, the government agreed to lower the loss amount attributable to McGhee and not to require a guilty plea to a money laundering charge. This reduced McGhee's offense level from 25 to 22. Being in Criminal History Category IV, that lowered the applicable Guideline range from 84-105 to 63- 78 months. In the case before this Court, the government agreed not to seek a two-level enhancement for role in the offense. That concession reduced McGhee's Guideline range from 57-71 to 46-57. In addition, as noted above, Mr. Tye negotiated the provision in both plea agreements that the government would not oppose concurrent sentences.

(Gov't Response to Section 2255 Mot. at 5.) Accordingly, the court rejects McGhee's argument that the factual allegations in items one, three, and four constitute ineffective assistance of counsel.

### *b. Item Two*

McGhee's argument in item two that Tye was ineffective for failing to challenge this court's jurisdiction is wholly without merit in light of the fact that the one-count Information against McGhee charges him with conspiracy, in violation of 18 U.S.C. § 371, to commit the following federal offenses: (1) mail theft, in violation of 18 U.S.C. § 1708; (2) bank fraud, in violation of 18 U.S.C. § 1344; and (3) money laundering, in violation of 18 U.S.C. §§ 1956 and 1957. (1:07 CR 177, Information, ECF No. 1.) Section 371 of Title 18 was duly enacted by Congress and states as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, ...

That is precisely the charge set forth in the Information filed against McGhee. Moreover, McGhee's Plea Agreement stated the essential elements that the government must prove to sustain a conviction for this offense. The Factual Basis set forth in the Plea Agreement, stated on the record by the Assistant United States Attorney at the plea hearing, contained proof of each of those essential elements, and McGhee pled guilty to the conspiracy charge. (Change of Plea Hr'g Tr. at 19-21). Additionally, this court also found that the Defendant's guilty plea was "supported by an independent basis in fact containing each of the elements of the offense." (*Id.* at 22-23). Thus, Tye's decision not to challenge this court's jurisdiction was not defective, and in any event, McGhee cannot show prejudice for the reasons set forth above in Section III(A)(2)(b). Accordingly, the court rejects McGhee's argument that the factual allegations contained in item two constitute ineffective assistance of counsel.

### *c. Item Five*

McGhee argues in item five that Tye was biased against him because he would not agree to talk to the U.S. Attorney and, as a result, Tye coerced him to plead guilty while he was under duress. McGhee is presumably arguing that his plea was involuntary as a result of Tye's alleged coercion, and that Tye's performance was therefore deficient. However, it is well-settled that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984) (footnote omitted). In *Brady v. United States*, 397 U.S. 742, 755 (1970), the Supreme Court stated the applicable standard for determining whether a plea is involuntary or unknowing:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable

> promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

(citations omitted). In reviewing Defendant's allegations in light of this standard, the court does not find any conduct by Defendant's counsel which amounts to a threat or misrepresentation under this standard. Thus, only when the evidence demonstrates that the defendant was not fairly apprised of its consequences can his plea be challenged.

Here, McGhee points to nothing in the record that suggests he was not fairly apprised of the consequences or terms of his plea. In fact, his statements to the court at his change of plea hearing indicate just the opposite. As stated above, McGhee informed the court that: he had read and understood the Plea Agreement and had discussed the terms with his counsel; he agreed with the summary of the Plea Agreement; he knew he would be required to abide by all terms of the Plea Agreement; and he was satisfied with his counsel's representation and the advice he had received from counsel. (Plea Hr'g Tr. at 7-9.) Significantly, contrary to Petitioner's assertions in his pending Motion, he agreed, both in his Plea Agreement and before the court, that no one had made any promises or threats to him regarding his plea. Thus, Petitioner's statement that he felt pressured to accept the Plea Agreement does not support a finding that McGhee's plea was induced by duress or coercion. Consequently, the court rejects McGhee's argument that the factual allegations contained in item five constitute ineffective assistance of counsel.

### B. Count Two: Prosecutorial Misconduct

McGhee alleges the following factual items to support his prosecutorial misconduct claim:

> (1) The U.S. Attorney Office violated the movant's constitutional rights (due process) when he illegally had the movant arrested and convicted under Title 18 as criminal charges.

> (2) The U.S. Attorney Office only went after the movant when in fact the

>> evidence show (sic) the co-defendants were actually the real players.
>
> (3) Breach of contract the government ask for a longer sentence.
>
> (4) Vindictive prosecution, the U.S. Attorney Office only went after the movant because the movant didn't cooperate with the investigations early on.

(Section 2255 Mot. at 5-6.)

### 1. Item One

The court rejects McGhee's argument that the criminal charges brought against him violated his due process rights. As set forth above, the Plea Agreement stated the essential elements that the government must prove to sustain a conviction for the conspiracy offense. Moreover, the Factual Basis set forth in the Plea Agreement, stated on the record by the Assistant United States Attorney at the plea hearing, contained proof of each of those essential elements. Finally, McGhee pled guilty to the conspiracy charge. Accordingly, McGhee's argument that the government's decision to charge him with criminal conspiracy constitutes prosecutorial misconduct is without merit.

### 2. Item Two

McGhee's conclusorily asserts that the government "only went after the movant when in fact the evidence show (sic) the co-defendants were actually the real players," and that this action constitutes prosecutorial misconduct. Conversely, the government argues that the evidence indicated that McGhee played a significant role in the conspiracy:

> [T]he evidence strongly indicated that McGhee was a significant participant in the conspiracy to steal checks from the Eaton Center and to launder those stolen checks. McGhee was essentially the middleman between the persons involved in stealing the checks and those who laundered the checks. In fact, defendant McGhee agreed to exactly that role in this offense in the Factual Basis of his Plea Agreement. Specifically, McGhee agreed that he received about 18 stolen checks totaling approximately $305,000 from one individual and provided them to Salem Habbas and Naiel Mustafa who laundered them.

(Gov't Response to Section 2255 Mot. at 8.) Here, while the government asserts facts that show a

-13-

good faith basis for its decision to pursue the conspiracy charge against McGhee, McGhee fails to point to any specific evidence showing he had no role in the conspiracy.

Moreover, the government correctly points out that McGhee's assertion that the government did not pursue charges against his co-defendant is false:

> [I]t is not true that only McGhee was prosecuted for the conduct involved in this case. Subsequently, similar charges were filed against Salem Habbas and Naiel Mustafa in Case No. 1:07CR520. Both defendants pled guilty to two conspiracy counts on October 24, 2007. They were each sentenced to 24 months in prison by Judge Nugent on January 16, 2008. It should also be noted that their sentences carried less prison time than McGhee because their criminal histories were far less serious than McGhee's. Also, the United States Attorney's Office intends to file charges against several other individuals in connection with this same matter.

(*Id.* at 6.) Accordingly, the court rejects McGhee's argument in item two that the government's conduct constitutes prosecutorial misconduct.

### 3. Item Three

McGhee argues that the government's breach of contract in requesting a longer sentence than what was negotiated in the Plea Agreement constitutes prosecutorial misconduct. At the sentencing hearing, the government informed the court that it believed McGhee breached the Plea Agreement by asserting his intention to appeal his sentence. Moreover, the government argues that McGhee also breached his Plea Agreement by failing to provide complete and truthful information in connection with both cases:

> When the investigating agents and the undersigned counsel met with defendant McGhee and attorney Tye for the aforementioned proffer on February 23, 2007, McGhee provided his version of the events relevant to both cases. McGhee's version of the facts in the case before Judge Wells was overwhelmingly contradicted by all the documentary evidence and statements made by no less than seven co-conspirators. Nevertheless, in an effort to be fair to the defendant and to conduct a complete and impartial investigation, the investigating agents took additional steps in an effort to determine which version was truthful. The defendant maintained that he was not the organizer or leader of the $1 million bank fraud conspiracy case. Rather, McGhee has blamed unindicted co-conspirator Jickie Hayes. Mr. Hayes was re-interviewed and was given a polygraph examination by the FBI which he passed. All of these factors led to the inevitable conclusion that McGhee had not been

-14-

> truthful with the government and that he had breached his obligations under both Plea Agreements.

(Gov't Opp'n to Section 2255 Mot.)

Based on these facts, which suggest that the government had a good faith belief that McGhee breached the Plea Agreement, the court does not find that the government's request that the court impose a longer sentence constitutes misconduct. In any event, McGhee suffered no prejudice, as evidenced by the court's statement to McGhee at the sentencing hearing that its sentencing decision was not influenced by the arguments of the Assistant United States Attorney, and the court's sentencing determination was an independent one.

### 4. Item Four

McGhee argues that the government engaged in prosecutorial misconduct by its "vindictive" action of "only [going] after the movant because the movant didn't cooperate with the investigations early on." However, as discussed above in Section III(B)(2), the government had sufficient evidence that McGhee played a significant role in the conspiracy and, as a result, was well within bounds to pursue charges against him. Accordingly, the court rejects McGhee's argument in item four that the government's conduct constitutes prosecutorial misconduct.

### C. Count Three ("Fatally Defective Information") and Count Four ("Court Lacks Jurisdiction")

McGhee alleges the following facts to support Ground Three of his Motion, i.e., that "the Information/Indictment is fatally defective":

> (1) The "Information" does not contain any language that alleges any interference with interstate commerce.
>
> (2) The "Information" does not consist of any elements that would give the government subject matter or personal jurisdiction.

(Section 2255 Mot. at 8.)

McGhee also alleges the following facts to support Ground Four of his Motion, i.e., that

-15-

he "wasn't prosecuted in the proper court with legal jurisdiction as Congress intended":

> (1) The movant was charged and convicted in a civil court jurisdiction "U.S. District Court" of violating Title 18 U.S.C. § 371.
>
> (2) "District courts" of the United States is where criminal jurisdiction lies for violations of a federal law.
>
> (3) The allege (sic) charges was within the state authority.
>
> (4) Jurisdiction was never established in any of the court proceedings.

(*Id.* at 9.)

As a threshold matter, because Petitioner agreed in the Plea Agreement to waive his right to appeal all issues except ineffective assistance of counsel and prosecutorial misconduct, a collateral attack on the Information and this court's jurisdiction is impermissible. In any event, for the reasons set forth more fully above in Section III(B), Grounds Three and Four are wholly without merit because the Information charged McGhee with violating 18 U.S.C. Section 371, a federal criminal law promulgated by Congress, and this court is the appropriate venue because the alleged conspiracy occurred in Cleveland, Ohio.

Accordingly, the court denies McGhee's Motion with respect to Counts Three and Four. For the same reasons, the court denies McGhee's Motion to Quash the Judgment for Defective Indictment/Information and Lack of Criminal Jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the court: (1) denies Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (1:08 CV 2193, ECF No. 1); and (2) denies Petitioner's Motion to Quash the Judgment for Defective Indictment/Information and Lack of Criminal Jurisdiction ("Mot. to Quash," 1:07 CR 177, ECF No. 19). Additionally, the court grants Petitioner's Motion to Correct Clerical Mistake (1:08 CR 177, ECF No. 21). In that Motion, Petitioner correctly points out that on March 10, 2008, the clerk mistakenly titled docket entry

-16-

number 13 as "Reply to Government's Response to Objections to Pre-Sentence Report," although the underlying document contained at docket entry number 13 is actually "Defendant Response to My Motion of Notice and Demand to Dismiss for Lack of any Criminal Jurisdiction Whatsoever."

Furthermore, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

June 18, 2009